UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LINDA M. PRICE, *et al*,

                              Plaintiffs,

   -against-                                  1:06-CV-1420
                                                   (LEK/DRH)

SAUGERTIES CENTRAL SCHOOL
DISTRICT,

                              Defendant.
_____

## MEMORANDUM-DECISION AND ORDER[1]

      This case concerns the constitutionality of a school district's communications protocol, which is alleged to restrict protected speech in violation of the First Amendment. The case was brought by Linda Price ("Price"), a former teacher with Defendant Saugerties Central School District ("Defendant" or the "District"), together with three self-described community activists Brittany Turner, Timothy Mathews and Jane Van De Bogart (with Price, "Plaintiffs").

### I. Background

      The Court previously heard a case involving Price and the District, in which this Court determined that the District's speech protocol at the time unconstitutionally restricted teachers' protected speech. Price v. Saugerties Cent. Sch. Dist. ("Price I"), 1:05-CV-0465 (LEK/DRH), 2006 WL 314458, at *1-2 (N.D.N.Y. 2006) (Kahn, D.J.). The protocol in effect at that time required that, if teachers "disagree with or take exception to some aspect of the procedures, decisions,

---

[1] For printed publication by the Federal Reporters.

1

assignments, etc., at [their] school," they must address them first with their immediate supervisor, before taking the issues up the chain of supervision or to the public. Id. at *4-5. In that case, this Court enjoined enforcement of the District's communications protocol because it restricted the avenues and timing for speech, including matters of public concern, and inhibited an even broader range of protected speech. Id. at *5.

In response to the Court's decision in Price I, the District changed their protocol so that, as of January 2, 2007, the protocol now reads:

"If you disagree with or take exception to some aspect of the procedures, decisions, assignments, etc at your school <u>relating to your personal employment situation</u>, you must speak first with your immediate supervisor. If you are not satisfied with the result of the first communication, you may then speak with the next level of school or district authority. If you do not raise the issue first with your immediate supervisor prior to proceeding to the next level of authority, then that next level of authority will direct you to raise the issue with your immediate supervisor before addressing the issue you raise."

Plntfs' Mem. of Law (Dkt. No. 8, Attach. 4) at 1 (emphasis added). Plaintiffs assert that this new protocol still poses an unconstitutional restriction to freedom of speech. Id.

The facts surrounding this case differ in a few significant ways from Price I . Prior to filing Price I, Price had sent an e-mail to her colleagues, complaining about "the teachers' union, harassment of teachers, and the scheduling of parent-teacher conferences," sent a letter to the District's Board of Education, complaining about the District's support of new teachers, and contacted the Saugerties Police Department about an incident at school, which she believed that the District did not investigate seriously enough. Price I, 2006 WL 314458, at *1. The District had

2

criticized Price for "chos[ing] to go outside the protocol process" and warned her that failure to follow the communications protocol in the future would result in discipline. Id. at *2. In the present case, no Plaintiffs face imminent discipline under the protocol; indeed, no Plaintiffs are even employees of Defendant. Price retired from her employment with Defendant prior to filing this claim and the other Plaintiffs do not assert ever having been or intending to be employed by Defendant.

Currently before the Court are Defendant's Motion for summary judgment and Plaintiffs' Cross-Motion for summary judgment

## II. Discussion

A.   Standing and Timing Issues

Defendant argues that this Court cannot assert jurisdiction over this case because the case is not justiciable, meaning that Plaintiffs do not have proper standing to bring this case and the matter has not reached the level of an actual case or controversy. Deft's Mem. of Law (Dkt. No. 8, Attach. 4) at 7, 11. See Warth v. Seldin, 422 U.S. 490, 498 (1975) (defining justiciability as "whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Article III"). Because proper standing and timing are both prerequisites to a federal court's Article III jurisdiction, they must be decided before approaching the merits of a case. Lerman v. Bd. of Elections in City of New York, 232 F.3d 135, 142 (2d Cir. 2000).

For a plaintiff to have standing sufficient to support jurisdiction, three elements must be met: actual or imminent injury that is not merely hypothetical, a connection between the plaintiff's injury and the defendant's conduct, and redressability of the injury with the requested relief. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102-104 (1998). When a plaintiff seeks injunctive relief, as

in this case, they "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." McCormick v. Sch. Dist. of Mamaroneck, 370 F.3d 275, 284 (2d Cir. 2004). The injury asserted must be personal to the plaintiff and involve the plaintiff's own rights. See Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 472-474 (1982).

No Plaintiffs are in a position to have their speech stifled by the protocol.[2] However, Plaintiffs argue that they nonetheless have standing because they are potential recipients of the protected stifled speech and because First Amendment jurisprudence allows for a more relaxed interpretation of standing, which would permit their claim to proceed. Plntfs' Response (Dkt. No. 13) at 1-2.

1. Standing as Recipient of Protected Speech

Plaintiffs are correct that it is possible to assert a claim for a violation of one's First Amendment right to receive protected speech. Spargo v. New York State Comm'n on Judicial Conduct, 351 F.3d 65, 83 (2d Cir. 2003) (citing Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, 425 U.S. 748, 756 (1976)). However, those rights are derivative of the rights of the speaker; the standing of listeners relies upon the existence of a willing speaker. Id. See also Martin v. U.S.E.P.A., 271 F. Supp. 2d 38, 47 (D.D.C. 2002) (noting that the right to receive information is not as broad as the right to speak; the First Amendment does not protect an

---

[2] Price asserts that, although she is currently retired, she may return to work for Defendant as a substitute or part-time teacher and would then be subject to the protocol as a speaker. Plntfs' Mem. of Law (Dkt. No. 8, Attach. 4) at 8. Because this is a merely hypothetical scenario, rather than a definite imminent situation, it does not change the standing analysis. Price, like the other Plaintiffs, cannot assert standing as a speaker affected by this protocol. Instead, Plaintiffs' standing must rely on others' protected speech.

4

individual's right to receive information on every subject, while an individual can speak on any subject he chooses.) Plaintiff has not demonstrated that there is a willing speaker whose speech is restricted under the confines of the protocol and protected under the First Amendment.[3] Without such a showing, Plaintiffs' claim is purely speculative. Speculative or hypothetical claims do not meet the Article III requirement for justiciability. Simon v. E. Kentucky Welfare Rights Org., 426 U.S. 26, 57 (1976) (contrasting "a difference or dispute of a hypothetical character" with a "justiciable controversy") (internal citations omitted). Accordingly, without showing the threat of an injury of sufficient immediacy, Plaintiffs cannot assert a claim under this theory. Id. Since they have not made this showing, their argument for recipient standing must fail.

        2.        Relaxed Standing Requirements for A First Amendment Challenge

In the alternative, Plaintiffs' claims can be understood to constitute a facial challenge to Defendant's protocol. The United States Supreme Court has carved out a narrow objection to traditional rules of standing so that a plaintiff can attack a statute or protocol that is alleged to be overbroad, "not because their own free rights of expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." Virginia v. Am. Booksellers Ass'n Inc., 484 U.S. 383, 393 (1988). This theory, the overbreadth doctrine, gives standing to plaintiffs to challenge a law or regulation that is unconstitutional in some cases, even if it is not unconstitutional as applied to the plaintiff. Broadrick v. Oklahoma, 413 U.S. 601, 611-614 (1973).

---

[3] Plaintiffs argue that the very existence of the communication protocol demonstrates the existence of willing speakers. Plntfs' Response (Dkt. No. 13) at 1. This argument is unconvincing. Plaintiffs' vague assertions that "outspoken teachers are not strangers to the district" are also insufficient to establish a willing speaker. Id.

5

However, if "the statute's deterrent effect on legitimate expression is not 'both real and substantial', and if the statue is 'readily subject to a narrowing construction,'" then a plaintiff is not entitled to assert the rights of third parties under the overbreadth theory. Young v. Am. Mini Theatres, Inc., 427 U.S. 50, 60 (1976) (quoting Erznoznik v. City of Jacksonville, 422 U.S. 205, 216 (1975)). See also Nat'l Endowment for the Arts v. Finley, 524 U.S. 569, 580 (1998) (noting that under the overbreadth theory, plaintiffs must show that there is "a substantial risk that application of the provision will lead to the suppression of speech"). It is not sufficient to show that any conceivable application of the protocol would suppress protected speech. Finley, 524 U.S. at 580. This kind of facial challenge to a statute or a protocol "on the basis of its hypothetical application to situations not before the Court" is strongly disfavored, so plaintiffs raising such a claim bear "a heavy burden." Id. at 584, 580. See also Los Angeles Police Dept. v. United Reporting Pub. Corp., 528 U.S. 32, 39- 40 (1999) (noting that the overbreadth doctrine is to be applied "only as a last resort" because it violates the prudential rules of constitutional adjudication).

Plaintiff has not met this burden; there is no substantial risk that application of Defendant's new communications protocol will suppress protected speech. In Price I, this Court criticized the protocol at issue because it was "sufficiently broad to capture matters of public concern." 2006 WL 314458, at *5. This criticism referenced that public employees' speech is only protected if it is on a matter of public concern. See Morrison v. Johnson, 1:01-CV-636 (RFT), 2006 WL 2811802, *11 (N.D.N.Y., Sep. 28, 2006) (Treece, M.J.) ("the First Amendment protects a public employee's right, in certain circumstances, to speak on matters of public concern") (citing Garcetti v. Ceballos, 126 S.Ct. 1951, 1957 (2006)). Public employees' speech protection is also limited by the public employer's "interest in regulating the speech of its employees in order to ensure and promote the

6

'efficiency of the public services it performs.'" Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 162 (2d Cir. 2006) (quoting Rankin v. McPherson, 483 U.S. 378, 384 (1987)). See also Garcetti, 126 S. Ct at 1959 ("while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'") (internal citation omitted). After this Court enjoined the application of the previous protocol in Price I, Defendant changed the wording of the protocol, confining its scope to speech "relating to [an employee's] personal employment situation." Deft's Statement of Facts (Dkt. No. 6, Attach. 1) at ¶¶ 6-11. Accordingly, all speech that relates to general policies or specific issues unrelated to a teacher's own employment is entirely unrestricted by the protocol. By way of example, Price's speech that violated the original protocol, in the facts surrounding Price I, would not be regulated under this new narrower protocol.

Defendant asserts that the protocol was created to deal only with matters of private concern and does not provide for any discipline for communication in violation of the protocol. Deft's Statement of Facts (Dkt. No. 6, Attach. 1) at ¶ 12. Superintendent Richard Rhau ("Rhau"), who created the new protocol, asserts in his affidavit that the protocol was created to encourage teachers to not take their personal employment issues to the District's Board of Education, bypassing their immediate supervisors. Id. at ¶ 12; Rhau Aff. (Dkt. No. 6, Attach. 2) at ¶ 7. Additionally, Rhau notes that the protocol "does not preclude staff members from speaking to anyone they may choose concerning any issue they may wish to address" and that if an employee violates the protocol, by raising personal employment matters directly with the Board of Education, the only official response allowed under the protocol is to refer the employee to the chain of command. Rhau Aff. (Dkt. No. 6, Attach. 2) at ¶¶ 7-8. These facts undermine Plaintiffs' argument that the protocol's

7

threat to free speech is "real and substantial." Additionally, this background illustrates that the protocol is "readily subject to a narrowing construction" under which protected speech is not restricted at all.[4]

For the aforementioned reasons, this claim does not fit into the exception to the standing requirement for facial challenges under the First Amendment. Since this exception does not apply and Plaintiffs do not have standing under any other theory, their claim is not justiciable and must be dismissed.

---

[4] Plaintiffs argue that a narrowing construction, as described above, is a legalistic formulation that will be incomprehensible to teachers and other non-lawyers, thus causing a chilling effect on protected speech beyond the scope of the protocol. Pltnfs' Response (Dkt. No. 13) at 5. While this Court is sensitive to the concern that the population subject to the protocol understand the narrow construction, such a concern is not relevant to this set of facts. Teachers are an educated group of individuals and the distinction between personal employment matters and matter of public concern is not overly complicated or legalistic. Additionally, although a narrowing construction eliminates any constitutional concern, it is not clear that even the broadest construction of the protocol would result in an unconstitutional restriction on protected speech.

8

### III. Conclusion

Based on the foregoing discussion, it is hereby

**ORDERED**, that Defendant's Motion for summary judgment (Dkt. No. 6) is **GRANTED**; and it is further

**ORDERED**, that Plaintiffs' Cross-Motion for summary judgment (Dkt. No. 8) is **DENIED**; and it is further

**ORDERED**, that the Amended Complaint (Dkt. No. 4) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:   September 12, 2007
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge